J-S50016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: M.R.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.R., MOTHER | |
| | No. 4 EDA 2015 |

Appeal from the Order Entered November 25, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000360-2013
CP-51-DP-0002282-2011

| | |
|---|---|
| IN THE INTEREST OF: S.J.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.R., MOTHER | |
| | No. 5 EDA 2015 |

Appeal from the Order Entered November 25, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0000361-2013
CP-51-DP-0002283-2011

BEFORE:  PANELLA, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY MUNDY, J.:                **FILED SEPTEMBER 28, 2015**

Appellant, R.R. (Mother), appeals from the November 25, 2014 decrees involuntarily terminating her parental rights to her twin daughters, M.R.C. and S.J.C. (the Children).[1] After careful review, we affirm.

The record reveals the following factual and procedural history, in relevant part. The Children were born prematurely in March 2011, and they suffer from chronic lung disease. N.T., 10/8/14, at 22, 24. As a result, the Children are prescribed daily medication. *Id.* at 24. In addition, S.J.C. suffers from a blood disorder and a weak digestive system. *Id.* Mother received in-home assistance with the Children from the Philadelphia Department of Human Services, Children and Youth Division (DHS), among other agencies, including, but not limited to, medical/nursing assistance.[2] *Id.* at 22.

In July 2011, DHS received a report that M.R.C. was failing to thrive. *Id.* On November 7, 2011, following a weekend visit of the Children with D.L. (Father), a visit that Mother permitted, DHS convinced Mother to take the Children to the hospital, where they were diagnosed with respiratory syncytial virus (RSV) and infections in their lungs and breathing passages.

---

[1] D.L., the Children's biological Father did not appeal the decrees terminating his parental rights.

[2] Mother testified that she has an older son, age eight, and an older daughter, age six, who are in her custody. N.T., 11/25/14, at 25.

Trial Court Opinion, 3/3/15, at 2.[3]  Upon discharge from the hospital on November 14, 2011, the DHS caseworker filed an application for protective custody "to ensure the safety of the [C]hildren."  Application for Protective Custody, 11/14/11.  That same day, the trial court granted DHS's application pursuant to 42 Pa.C.S.A. § 6324, on the basis that "continuation in the home would be contrary to the health, safety and welfare" of the Children, and the Children were placed in the custody of DHS.  *Id.*  On December 12, 2011, the trial court adjudicated the Children dependent.  *Id.*  They reside together in a pre-adoptive medical foster home.  N.T., 10/8/14, at 24, 26.

On June 20, 2013, DHS filed separate petitions for a goal change to adoption and for the involuntary termination of Mother's and Father's parental rights.  The trial court held hearings on the petitions on October 8, 2014, and November 25, 2014, during which the following witnesses testified: Dr. William Russell, who performed a parenting capacity evaluation with respect to Mother; Janet Thurston, DHS caseworker; Becky Rossi, Bethanna Foster Care Agency caseworker; Father; and Mother.

On November 25, 2014, by separate decrees, the trial court involuntarily terminated Mother's and Father's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).  On December 22, 2014, Mother filed *pro se* notices of appeal and concise statements of

_____

[3] The trial court's Rule 1925(a) opinion does not contain pagination, for ease of review we have assigned each page a corresponding page number.

- 3 -

errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i), which this Court consolidated *sua sponte*.[4] The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on March 3, 2015.

On appeal, Mother presents the following issues for our review.

> 1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [M]other … pursuant to 23 Pa.C.S.A. [§] 2511(a)(1) where [M]other presented evidence that she consistently tried to perform her parental duties and met all of her FSP goals[?] Mother was consistently visiting with her children and attended medical appointments throughout the length of her children's placement. The record does not establish that mother evidenced a settled purpose to relinquish her parental rights nor does the record establish that she was unable to perform her duties with adequate services in place to help her[?]

> 2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [M]other … pursuant to 23 Pa.C.S.A. [§] 2511(a)(2) where mother presented evidence that she has remedied her situation by meeting all of her [FSP] goals and has the present capacity to care for her children just as she cares for her other two children who live with her currently[?]

> 3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [M]other … pursuant to 23 Pa.C.S.A. [§] 2511(a)(5) where evidence was provided to establish that mother voluntarily accepted services from different agencies including DHS and that she is capable of

---

[4] On April 9, 2015, Mother's trial counsel filed an application to withdraw as counsel with this Court, which we granted by order filed on April 21, 2015. On April 30, 2015, the trial court appointed new counsel to represent Mother on appeal.

caring for her children with these services just as she is capable of caring for her two other children that are in her care who also have medical issues[?]

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [M]other … pursuant to 23 Pa.C.S.A. [§] 2511(a)(8) where evidence was presented to show that [M]other is capable of caring for her children after meeting all her FSP goals[?]  No evidence was presented that mother would be unable to care for her children with appropriate support and services in her home.

5. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [M]other … pursuant to 23 Pa.C.S.A. [§] 2511(b) evidence was presented that established the children lived with [M]other for [] several months and mother consistently visited and attended family school with her children to maintain her parental bond with her children[?]

Mother's Brief at 7-8.

Our review is guided by the following well-settled law.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Instantly, we conclude that the trial court properly terminated Mother's parental rights pursuant to Section 2511(a)(2) and (b), which provide as follows.[5]

**§ 2511. Grounds for involuntary termination**

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

…

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

…

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical

---

[5] This Court need only agree with any one subsection of 23 Pa.C.S.A. § 2511(a), along with Section 2511(b), in order to affirm the termination of parental rights*. **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Therefore, in light of our disposition as to Section 2511(a)(2), we need not consider Mother's arguments with respect to Section 2511(a)(1), (5), and (8). Nevertheless, upon careful review of the trial court's Rule 1925(a) opinion, we agree with the trial court that termination pursuant to Section 2511(a)(5) and (8) was also proper. **See** Trial Court Opinion, 3/3/15, at 3-5.

care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements.

(1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination [of parental rights under Section 2511(a)(2),] due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

With respect to Section 2511(b), the requisite analysis is as follows.

Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and

stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

On appeal, Mother argues that her conduct does not warrant termination under Section 2511(a)(2) because she has completed all of her Family Service Plan (FSP) goals. Mother's Brief at 17. Specifically, she asserts that she complied with the goals of attending the Achieving Reunification Center, family school, individual therapy, and parenting classes. *Id.* In addition, Mother asserts that she can provide a safe home for the Children, and that she is caring for her other children competently. *Id.* Finally, Mother asserts that the Children "are now healthier than they were several years ago", and that she has the present capacity to care for them. *Id.* For the reasons that follow, we discern no abuse of discretion by the trial court.

At the conclusion of the termination hearing, the trial court stated the following in open court.

> Mom has been and is compliant with her FSP objectives. However, that is not the issue. The issue as counsel has ably stated which I wrote down

- 9 -

> [ ] with respect to mom is, can the mom parent these two medically needy children? The testimony regarding that from Dr. Russell as well as the social workers was, no. She can't effectively parent these children due to capacity issues. Mother even testified today regarding the medication and after three years in care, unfortunately not that she doesn't care but unfortunately she got it wrong. That's very telling in this case. I have to do what's in the best interest of the child[ren] to ensure their safety.

N.T., 11/25/14, at 42.

Dr. William Russell, an expert in Forensic Evaluations, testified that he performed a parenting capacity evaluation with respect to Mother in April 2014. N.T., 10/8/14, at 7. Dr. Russell concluded that Mother "was not prepared or capable of caring for the safety and permanency of these [C]hildren at the time of the evaluation." *Id.* at 11. Dr. Russell explained that Mother has an IQ in the borderline range, and that "[Mother] has a good deal of difficulty abstracting, taking apart things, taking apart alternatives. She has great difficulty anticipating actions or anticipating activities, which is a critical component of parenting. Especially, with any type of child with any problems…" *Id.* at 13. Dr. Russell testified that, in his opinion, Mother "was not able to provide the safety for permanency, and unless there was some dramatic change or something happened dramatically, I don't think that was going to change in the near future." *Id.* at 17.

Similarly, Janet Thurston, the DHS caseworker, testified on cross-examination by the Child Advocate, as follows.

> Q. In your opinion, do you believe that the mother really understood the challenges that these twin children face because of their medical issues?
>
> A. No.
>
> Q. Do you believe that mother will, ever, even one day, acquire the ability to properly parent severely ill children?
>
> A. No.
>
> Q. You don't believe that?
>
> A. No.

*Id.* at 27.

Likewise, Becky Rossi, the Bethanna Foster Care Agency caseworker, testified that she does not believe Mother has the ability to administer the medication required for the Children. *Id.* at 30. She explained that she has attended the Children's medical appointments with Mother, and that Mother "never ask[s] any questions, and, yet, afterwards she doesn't understand their needs and she doesn't understand what's required." *Id.* at 30-31. Further, she explained that Mother "is very passive during doctor appointments and doesn't ask any questions. [ ] [T]he doctors will direct it to her and say, 'Do you need any more information?' And she never has any questions." *Id.* at 31.

Finally, Mother testified on direct examination with respect to the Children's medical needs, as follows.

> Q. Tell me what medical needs, your understanding of what their current medical needs are?
>
> A. (No response.)
>
> Q. Are they on oxygen?
>
> A. No. (Inaudible) well, they have been off the oxygen. They recently – when I told her their [sic] doctor said they no longer need the pump no more, (inaudible) they was going to give them – only reason – because they didn't have allergies.
>
> …
>
> Q. What is your understanding of what – like from the minute the girls wake up what kind of medical treatment you might need to give them on a regular basis – on a daily basis, like, if they were with you today what would you have to do with them?
>
> A. I would (inaudible) I guess their medicine (inaudible) asthma pump, they have a breathing machine.
>
> Q. Okay, so do you know how often they get the asthma pump?
>
> A. Yes.
>
> Q. How often?
>
> A. The albuterol is every four hours, the Flovent (sic) is as needed.
>
> Q. Are the girls on any kind of monitors?
>
> A. No.

N.T., 11/25/14, at 29-30.

However, Rossi testified on rebuttal by counsel for DHS to the following.

> Q. Miss Rossi, mother just testified on direct examination having been asked by her attorney about the children's medical care, the children get Albuterol every four hours and Flovent as needed; is that correct?
>
> A. No.
>
> Q. What's the correct medication schedule for the children?
>
> A. They get Flovent twice daily and Albuterol as needed but only every four hours.
>
> Q. Mom also mentioned an asthma pump, is this [sic] such a thing as an asthma pump?
>
> A. I'm not sure what she's referring to –
>
> Q. – okay.  Are the children under the care of any other medicines or instruments?
>
> A. They have another allergy medicine that they take daily, I don't know the name of it but that's a daily medicine.
>
> Q. Are there any machines that they use at any time?
>
> A. Sometimes in the winter if they get a bad cough they use a nebulizer.

*Id.* at 32.

Based on the foregoing testimonial evidence, we discern no abuse of discretion by the trial court in concluding that Mother's repeated and continued incapacity has caused the Children to be without essential

parental care, control or subsistence necessary for their physical well-being, and that the causes of Mother's incapacity cannot or will not be remedied. Thus, Mother's issue fails with respect to Section 2511(a)(2).

With respect to Section 2511(b), Mother argues that the Children "have lived with [her] for the first months of their lives and have a strong bond with [her] and [their] siblings." Mother's Brief at 20. Further, Mother argues that her "continued visitation with her children has kept this bond strong[;] therefore, termination of mother's rights does [not] serve [their] physical and emotional needs and welfare." *Id.* We disagree.

This Court has explained the trial court's role in assessing the needs and welfare of the child, as follows.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015), *quoting In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011).

Herein, the trial court found that the Children "have established a bond with their foster parents of three years…. The foster parents provide a safe and appropriate home and meet the needs, including all medical needs, of

the [C]hildren…." Trial Court Opinion, 3/3/15, at 5 (citations to record omitted).

Thurston testified that the Children have been in the same medical foster home for 34 months at the time of the termination hearing, and that the foster parents are meeting the Children's needs. N.T., 10/8/14, at 24. She testified that the Children "are extremely bonded with these foster parents. They address them as mom and dad." *Id.* at 25. Thurston testified that Mother has consistently attended weekly visits with the Children during their dependency, but that the Children have a primary parental bond with "[t]he current medical foster parents." *Id.* Likewise, Rossi testified, in part, that the Children "look to the foster parents as their parents. They call them mommy and daddy." *Id.* at 29.

The foregoing testimonial evidence demonstrates that the Children have a parental bond with their pre-adoptive foster parents and not with Mother. Moreover, the totality of the record evidence overwhelmingly demonstrates that involuntarily terminating Mother's parental rights would best serve the developmental, physical, and emotional needs and welfare of the Children. *See In re J.M.*, *supra*. Thus, Mother's issue fails with respect to Section 2511(b).

Based on the foregoing, we conclude the trial court did not abuse its discretion in terminating Mother's parental rights pursuant to 23 Pa.C.S.A.

§ 2511(a)(2) and (b).  ***See In re T.S.M.***, ***supra***.  Accordingly, we affirm the trial court's November 25, 2014 decrees.

Decrees affirmed.

Judge Panella joins the memorandum.

Judge Jenkins concurs in the result.


*Judgment Entered.*

_Joseph D. Seletyn, Esq._
*Prothonotary*


Date: <u>*9/28/2015*</u>