J-S55007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF C.N.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: N.D.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 931 WDA 2020 |

Appeal from the Decree Entered June 24, 2020
In the Court of Common Pleas of Armstrong County Orphans' Court at
No(s):  4 of 2020

BEFORE:   BOWES, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 29, 2021**

N.D.W. ("Father") appeals from the June 24, 2020 orphan's court order granting the petition filed by Armstrong County Children and Youth Services ("CYS") to involuntarily terminate his parental rights to his son, C.N.W.  We affirm.

Father and S.W. ("Mother") are plagued by substance abuse, homelessness, and incarceration.[1]  CYS twice initiated services for the family before the incidents that preceded the instant termination of parental rights proceedings.  The agency first became involved with the family during October

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mother voluntarily relinquished her parental rights on June 11, 2020, and she did not participate in this appeal.  Notably, Mother currently resides with her grandmother in Saxonburg, Pennsylvania and she interacts with C.N.W. at the home of his pre-adoptive parents, the maternal grandparents.

2015, when C.N.W. was born with symptoms of withdrawal due to Mother's prenatal abuse of heroin and cocaine. Although CYS eventually closed that case, the agency opened a new case seven months later in May 2016, after police discovered Mother intoxicated in public with the infant. The agency temporarily placed C.N.W. with his maternal grandparents ("Maternal Grandparents") but eventually returned him to the family residence under the agency's protective supervision. It closed that second case in January 2017.

The following month, the agency's intervention was required once more to address the ongoing substance abuse of Mother and Father. The situation continued to deteriorate and, with both parents' consent, the juvenile court adjudicated C.N.W. dependent on August 24, 2017. He remained at the family residence under the protective supervision of CYS until the agency finally removed him from the home after separate incidents where Mother was arrested for an intoxication-related assault, and Father overdosed on opiates. On February 15, 2018, CYS placed C.N.W. with Maternal Grandparents, where he has remained.

CYS developed a family service plan ("FSP") that required Father to address his problems with substance abuse, secure adequate housing, and to cooperate with CYS. Between May 2018 and May 2019, Father's progress was minimal. During August 2019, Father made brief headway in conjunction with a period of criminal probation, rehabilitation, and his transition to a halfway

house. The improvement was ephemeral, however, and by December 2019, his compliance with the FSP had deteriorated beyond recovery.

On January 29, 2020, CYS filed a petition for the involuntary termination of parental rights under the grounds outlined in 23 Pa.C.S. § 2511(a)(1), (a)(5), and (a)(8) and § 2511(b). As of that date, C.N.W. had been in continuous placement with Maternal Grandparents for approximately two years. During the ensuing hearing, CYS presented Tiffany Cline, the caseworker assigned to the family, who testified about the history of the case and Father's slow progress toward reunification.[2] Ms. Cline recounted Father's struggle to maintain appropriate housing when he was not incarcerated, and his discharge from a mental health treatment program for noncompliance. She highlighted that substance abuse was the primary cause of C.N.W.'s placement and indicated that Father failed to complete a rehabilitation program and maintain sobriety. At the time of the hearing, Father was incarcerated for retail theft and faced further criminal prosecution on drug-

---

[2] Consistent with our Supreme Court's holding *In re Adoption of K.M.G.*, 240 A.3d 1218 (Pa. 2020), we verify that the orphans' court appointed Paula LaStrapes, Esquire, the guardian *ad litem* during the dependency proceedings, to represent C.N.W. in the termination proceedings pursuant to 23 Pa.C.S. § 2313(a). *See id*. (reiterating, absent a conflict between legal interest and best interests, one attorney may serve dual role of guardian *ad litem* and § 2313 counsel). Attorney LaStrapes informed the orphans' court that four-year-old C.N.W. was unable to articulate a preferred outcome of the termination proceedings, and therefore, she did not discern a conflict of interest. *See* N.T., 6/10/20, at 50-51.

related charges, including possession with intent to deliver. In short, Ms. Cline testified that the circumstances that led to C.N.W's placement continued to exist and that the child was thriving in the care of Maternal Grandparents, a pre-adoptive resource.

Subsequent to the hearing, the trial court entered a thorough memorandum and decree terminating Father's parental rights pursuant to § 2511(a)(1),(5), (8) and § 2511(b).[3] Father timely filed a notice of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), and the orphans' court entered an opinion that relied upon the reasons outlined in its prior memorandum and decree. Trial Court Opinion, 7/27/20, at 1.

Father raises the following issues for our review:

I.    Whether the trial court abused its discretion and/or erred as a matter of law in finding that [CYS] had proven grounds for the involuntary termination of appellant's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (5), and (8) by clear and convincing evidence?

II. Whether the trial court abused its discretion and/or erred as a matter of law in concluding that termination of appellant's parental rights would serve the needs and welfare of the child pursuant to 23 Pa.C.S. § 2511(b)?

Father's brief at 4.

Our standard of review is well settled:

---

[3] While the orphans' court terminated parental rights under 2511(a)(1), (5), and (8), it subsequently acknowledged that CYS failed to establish the grounds for termination under subsections 2511(a)(1). *See* Trial Court Opinion, 7/27/20, at 1.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (cleaned up).

Involuntary termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938. As the party petitioning for termination of parental rights, CYS "must prove the statutory criteria for that termination by at least clear and convincing evidence." *In re T.R.,* 465 A.2d 642, 644 (Pa. 1983). Clear and convincing evidence is defined as "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Matter of Sylvester*, 555 A.2d 1202, 1203–04 (Pa. 1989).

Father asserts that CYS failed to establish by clear and convincing evidence the statutory grounds for the termination of his parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (5), and (8) and (b). In order to affirm termination, we need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). As the orphans' court's opinion focused on

§ 2511(a)(8) and § 2511(b), we will similarly confine our review to these

sections, which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> . . . .
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8) and (b).

In order to satisfy the requirements of § 2511(a)(8) in the case at bar,

CYS was required to produce clear and convincing evidence that: (1) C.N.W.

has been removed from Father for at least twelve months; (2) the conditions

which led to the child's removal continue to exist; and (3) involuntary

termination of parental rights would best serve the children's needs and

welfare. *See In Re Adoption of M.E.P.,* 825 A.2d 1266, 1275–1276 (Pa.Super. 2003). "Notably, termination under Section 2511(a)(8), does **not** require an evaluation of [Father's] willingness or ability to remedy the conditions that led to placement of [his] children." *In re Adoption of R.J.S.,* 901 A.2d 502, 511 (Pa.Super. 2006) (emphasis in original).

C.N.W. has been in the care of CYS since February 15, 2018, due to, *inter alia*, concerns about Father's drug abuse and criminal activity. As CYS did not file its petition to terminate Father's parental rights until January 29, 2020, approximately twenty-three and one-half months later, the agency satisfied the threshold requirement of § 2511(a)(8). Likewise, since Father concedes that the conditions which led to C.N.W.'s placement continue to exist, we do not address the prong of § 2511(a)(8) relating to Father's ongoing substance abuse criminal activity.

The crux of Father's contention relates to the trial court's needs and welfare analysis under § (a)(8), which he asserts is both coextensive with the parallel component of § (a)(5) and separate from the determination pursuant to § 2511(b), regarding whether the termination of parental rights serves the developmental, physical, and emotional needs and welfare of the child. Specifically, Father asserts that the orphans' court's analysis under § (a)(8) was deficient insofar as the court did not perform a thorough examination of the parent-child bond as required by § 2511(b). *See* Father's brief at 17-18 ("[CYS] failed to prove each separate element of subsection (a)([8]) by clear

and convincing evidence, and the trial court lacked the evidence necessary to conduct a full and proper analysis of the Child's needs and welfare."). Father misstates the extent of the orphans' court's needs and welfare analysis under § (a).

Contrary to Father's protestations, § (a)(8) does not require the developed bond-effect analysis that is central to § 2511(b). As this Court previously explained,

> Section 2511(a)(8) explicitly requires an evaluation of the needs and welfare of the child prior to proceeding to Section 2511(b), which focuses on the developmental, physical and emotional needs and welfare of the child. Thus, the analysis under Section 2511(a)(8) accounts for the needs of the child in addition to the behavior of the parent.

*In re C.L.G.*, 956 A.2d 999, 1008–09 (Pa.Super. 2008) (*en banc*). Hence, while § 2511(b) focuses chiefly on the existence of a beneficial parent-child bond and the potential effects of severing that bond, the needs-and-welfare component of § 2511(a)(8) centers primarily on the parent's actions and inactions. Indeed, "only if a court determines that the parent's conduct warrants termination of his or her parental rights, pursuant to Section 2511(a), does a court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." *Id*. at 1009 (quotations and citation omitted). Thus, the orphans' court did not err or abuse its discretion by forgoing an in-depth analysis of the parent-child bond under § 2511(a)(8).

In addressing the needs and welfare prong of § 2511(a)(8), the orphans' court observed:

> Finally, by all accounts, C.N.W. is doing very well at Maternal Grandparents' house, where he has lived for almost two and one-half years. He will be entering school soon and is progressing normally. He is comfortable at their home and has visits with Mother on a regular basis. He has had visits with Father at Father's apartment in Indiana and at the Armstrong County Jail. Although their relationship is not overly-strained, given the fact that Father has not performed any substantial parental duties for a period exceeding two years, the Court concludes that the perpetual nature of Father's substance abuse and his continued incarnation compels a finding that C.N.W.'s best interest and welfare would be served by termination of Father's parental rights.

Trial Court Opinion, at 11-12.

As Father does not challenge the orphans' court's rationale beyond asserting that the court neglected the bond-effect analysis, and because the certified record supports the court's conclusion that C.N.W. is progressing with Maternal Grandparents and that Father's behavior is detrimental to his son's best interests, we do not disturb it.

Having found that the certified record supports the orphans' court's finding that CYS established the statutory grounds to terminate Father's parental rights pursuant to § 2511(a)(8), we next address the court's needs and welfare analysis pursuant to 2511(b). Again, Father frames his argument as challenging whether CYS established its burden of proving by clear and convincing evidence that the termination of parental rights would serve the needs and welfare of C.N.W. Father's brief at 19. However, the gravamen of this assertion is that termination is not the least drastic alternative in light of

the likelihood that Mother will remain in contact with the child despite relinquishing her parental rights. Father asserts that utilizing a less severe alternative to terminating his parental rights, such as the transfer of legal and physical custody of his son to Maternal Grandparents, would serve the child's interest "while preserving [Fathers'] ability to be the Father figure he desires to be for the Child." Father's brief at 21.

Father's desire to preserve his parental rights in order to perform his parental duties at this juncture has little bearing on the pertinent analysis. It is beyond cavil that a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *See In re Z.P.*, 994 A.2d 1108, 1121, (Pa.Super. 2010). Moreover, at the time of the hearing, C.N.W. had been in the current placement, his third since his birth in 2015, for approximately twenty-eight consecutive months, and the child is entitled to permanency and stability. A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id*. at 1125. Thus, Father's eleventh-hour attempt to invoke a potentially less drastic alternative to the termination of his parental rights fails.

Finally, we observe that the certified record support's the orphans' court's well-reasoned analysis with respect to § 2511(b). This Court has explained the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental
> rights would best serve the developmental, physical, and

emotional needs and welfare of the child. In ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa.Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. ***Id***. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa.Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. ***Id***. at 63.

***In re Adoption of J.M.***, 991 A.2d 321, 324 (Pa.Super. 2010). As a general matter, Pennsylvania does not require the orphans' court to enlist a formal bonding evaluation, and the court's needs and welfare analysis need not hinge upon expert testimony. ***In re Z.P.***, 994 A.2d 1108, 1121 (Pa.Super. 2011).

In relation to § 2511(b), the orphans' court provided as follows:

> First, as the [c]ourt already had found, C.N.W. is doing well residing with Maternal Grandmother, with whom he has had a very close relationship for the past several years. Second, although Mother currently resides with her grandmother in Saxonburg, she visits with C.N.W. on a regular basis at Maternal Grandparents' residence. Third, and despite Father's protestations to the contrary, Maternal Grandparents have not at any point unreasonably prevented Father from having visits with C.N.W. Maternal Grandparents transported C.N.W. to Indiana, Pennsylvania for [weekly visits during] 2019 and further permitted C.N.W.'s visitation with Father at the Armstrong County Jail. Given the significant dangers that both [p]arents' drug abuse presented to C.N.W., the [c]ourt does not find that Maternal Grandparents in any way acted unreasonably in protecting C.N.W.'s physical and emotional welfare during his placement.

> Although Father testified that he still has a good relationship C.N.W., the [c]ourt must take note that for the past almost three years, Father parented C.N.W. if at all, though the auspices of [CYS], . . . with protective supervision through placement. During that period, Father overdosed, lost his housing, was incarcerated

- 11 -

for extended periods, and spent no small amount of time housed at drug rehabilitation facilities. Father overdosed while C.N.W. was in his care and will not be available to parent at all for at least the next several months, if not years. Given these facts, the Court must conclude that C.N.W.'s developmental, emotional, and physical needs will be best served by termination of Father's parental rights and his adoption by Maternal Grandparents. Any relationship that would be maintained with Father for the foreseeable future would have to be facilitated through a state correctional facility located outside of Armstrong County. A healthy, supportive, and structured parent - child relationship necessary for C.N.W.'s development will be impossible by that means. Thus, and notwithstanding Father's love and affection for C.N.W., the Court finds that C.N.W.'s needs and welfare compel termination of Father's parental rights at this time.

Trial Court Opinion, at 12-13.

The certified record supports the orphans' court's conclusion. During the evidentiary hearing, Ms. Cline testified that C.N.W. is thriving in Maternal Grandparents' pre-adoptive home, and he is strongly attached to them in their role as parental resources. N.T., 6/10/20, at 35. He is happy in the home, and despite his turbulent history with Mother and Father, he is "pretty much a typical 4-year-old." *Id*. at 35, 36. Moreover, Father's sporadic imprisonment hampered his contact with C.N.W., and while CYS facilitated visitations while Father was incarcerated locally at the Armstrong County Jail, his subsequent imprisonment at a state facility precluded in-person contact. *Id*. at 44. In fact, because of the COVID pandemic, C.N.W. has not had physical contact with either parent since February 2020. *Id*. In sum, Ms. Cline reiterated the agency's position that terminating Father's parental rights serves C.N.W.'s best interests. *Id*. at 46.

- 12 -

The certified record bears out that C.N.W. is best served by terminating Father's parental rights in anticipation of adoption by Maternal Grandparents. Stated plainly, for the majority of his life, C.N.W. has been in placement with his Maternal Grandparents, who continue to provide a stable, loving environment that consistently satisfied his developmental, physical and emotional needs and welfare notwithstanding his parents' chronic drug abuse.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/29/2021