J-S11016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: O.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1221 WDA 2020 |

Appeal from the Order Entered November 3, 2020,
in the Court of Common Pleas of Allegheny County,
Orphans' Court at No(s):  CP-02-AP-0000045-2020.

| | | |
|---|---|---|
| IN THE INTEREST OF: J.S., A MINOR CHILD | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1222 WDA 2020 |

Appeal from the Order Entered November 3, 2020,
in the Court of Common Pleas of Allegheny County,
Orphans' Court at No(s):  CP-02-AP-0000044-2020.

BEFORE:   STABILE, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: JUNE 1, 2021**

In this consolidated matter, S.S. (Father) appeals the orders involuntarily terminating his parental rights to his six-year-old daughter, O.S., and seven-year-old son, J.S., (the Children), pursuant to the Adoption Act.

---

[*] Retired Senior Judge assigned to the Superior Court.

*See* 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b). Father concedes that the Allegheny County Office of Children, Youth and Families (CYF) established grounds under Section 2511(a); however, Father claims the court erred by determining that termination best served the Children's needs and welfare under Section 2511(b). After review, we affirm.[1]

The relevant factual and procedural history is as follows: The family came to the attention of CYF in June 2018 following allegations that the Children had not received timely medical care and that Mother abused drugs and alcohol. But the impetus for the Children's removal was the birth of the Children's half-brother, R.H., Jr., who tested positive for opiates and alcohol when he was born. Children and R.H., Jr., were placed in the home of N.C. (Foster Mother), where they have resided since. At the time of their removal from the parents' care, the Children were three and five years old, respectively.

The Children were adjudicated dependent on October 10, 2018. At the time, Father struggled with drug addiction and was on probation for drug related charges. The court ordered a family service plan to facilitate Father's reunification with the Children. Father's reunification goals were: to participate in drug and alcohol counseling; to visit the Children consistently;

---

[1] The court also terminated the rights of E.L.J. (Mother), who did not appeal. We also observe that case involved the Children's half-sibling, two-year-old R.H., Jr., whose father is R.H. Sr. The facts concerning that child are largely irrelevant to the disposition of this appeal.

to provide regular urine screens; and to obtain stable housing. The trial court ordered multiple services to help Father achieve these goals.

Over the course of the dependency proceedings, Father failed to achieve these goals. He did not complete a drug and alcohol assessment, and he only complied with 7 of 34 urine screens. Father did not obtain housing of his own, instead staying in the homes of various people. Father missed over half of the scheduled visitations; moreover, the visits had to be supervised. With the onset of the Covid-19 pandemic, the court changed the visitations from in-person to virtual. Father could have taken advantage of this situation, as the court permitted liberal, virtual visits. However, Father called inconsistently, and at late hours after the Children went to bed. In one instance, the Foster Mother reported that Father snorted what she believed to be a controlled substance from the top of a table; the Foster Mother also observed that Father's demeanor changed. His nose was red, and he continuously wiped it. As recently as September 2020, Father reported that he had been using cocaine and marijuana and admitted to not being in active drug treatment.

At the time of the termination hearing, the Children had spent the preceding 26 months in the care of Foster Mother. The court noted the familial relationship between the Foster Mother and Father, as Father was childhood friends with Foster Mother's uncle. O.S. had special medical needs, requiring specialists and transportation to and from appointments, but she was essentially on target at the time of the hearing. J.S. had an Individualized

Educational Plan (IEP), but he was also developmentally on track. Both Children were doing well in the Foster Mother's care.

CYF petitioned for the involuntary termination of Father's rights. The trial court held a video hearing on October 29, 2020. Notably, the court heard expert testimony from forensic psychologist, Neil Rosenblum, Ph.D., who opined that the Children did not have a necessary bond with Father worth preserving. The court explicitly found Dr. Rosenblum's testimony to be compelling. Dr. Rosenblum recommended termination. The court also noted that Father appeared six hours after the virtual hearing began. He did not offer testimony, nor did his counsel call any witnesses on his behalf. At the conclusion of the hearing, the court terminated Father's rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b). Father timely filed this appeal and presents the following single issue for our review:

> Whether the trial court erred and/or abused its discretion by finding that CYF met their burden of proof and proved by clear and convincing evidence that terminating the parental rights of Father best meets the needs and welfare of the Children pursuant to 23 Pa.C.S.A. § 2511(b)?

Father's Brief at 6 (capitalization adjusted).

We begin our well-settled standard of review of termination cases:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness,

partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.,* 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Here, the trial court found that statutory grounds for termination existed under Section 2511(a)(2), (5), and (8). Father did not appeal that finding, and thus the first step of the bifurcated analysis is undisputed. The issue here involves the second step of the termination analysis, whether CYF met its burden under Section 2511(b). That section states in relevant part:

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and

medical care if found to be beyond the control of the parent. [...].

23 Pa.C.S.A. § 2511(b).

This Court has explained that:

> [S]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Concerning the bond, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship. *See C.M.K.*, 203 A.2d at 264 (citation omitted); *see also K.Z.S.*, 946 A.2d at 764 (holding there was no bond worth preserving where the child had been in foster care for most of the child's life, which caused the resulting bond to be too attenuated). We add, the court is not required to use expert testimony to resolve the bond analysis but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). Finally, we emphasize that "[w]hile a parent's emotional bond with

her and/or her child is a major aspect of the § 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." **In re N.A.M.**, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted).

On appeal, Father argues the court erred because it focused on Father's lack of progress, instead of the best interests of the Children. **See** Father's Brief at 13. In other words, he claims the court did not properly adjust its focus when the termination analysis necessarily shifted from Section 2511(a) (concerning the parent's conduct) to Section 2511(b) (concerning the child's needs and welfare). **See C.M.K.**, **supra**. Father further claims he "felt that he has a close bond with his [C]hildren and felt rewarded in his parenting role." **See** Father's Brief at 13.

Father's arguments are unavailing. For one, "[a] parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." **In re Z.P.**, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citation omitted). More to the point, the trial court properly narrowed its Section 2511(b) analysis on the Children. The court found that Children did not have a bond with Father, and that they shared an emotional bond with their Foster Mother, as well as their half-sibling, R.H., Jr., who also resides in the home. **See** Trial Court Opinion, 1/19/21, at *21 (not paginated). Relying on Dr. Rosenblum's testimony, the court determined that the Children did not have a necessary or serious relationship with Father, and that the severance of this relationship would not create undue harm or an emotional setback for the Children. **Id.** at

*23-24. In fact, the court concluded that the opposite would be true, finding that the Children would experience harm if they were separated from the Foster Mother, that the Children had an unstable and negative relationship with Father, but that they "rebounded" while in the Foster Mother's care. **See id.** Aside from the bond evaluation, the court further determined that termination would provide the Children with permanency and stability, as Father's inability to provide necessary parental care would cause the Children to languish.

Upon our review, we conclude these findings are supported by the record. Father has not had consistent contact with the Children, nor does he fully understand the responsibilities of being a parent. Dr. Rosenblum testified that Father seemed relatively unaware of Children's situation, not knowing where the Children attended school or what grades they were in. **See** N.T., 10/29/20, at 99. Dr. Rosenblum opined that the Children's lives have "very much been solidified and supported by two years of placement in their foster home." **Id.** at 111. He opined further that the Children now have a primary attachment to the Foster Mother. **Id.** The CYF caseworker also testified that the Children are bonded to the Foster Mother. We agree with court's conclusion that the Children have "moved on" from Father, and considered the Foster Mother to be their source for security and stability. Dr. Rosenblum described the relationship between Father and Children as "comfortable" and "pleasant." **Id.** at 99. To the extent the Children have a pleasant relationship with Father, we may infer that this is attributable to the Foster Mother, whose

nurturing ensured the Children's healthy development. Therefore, we conclude CYF established, by clear and convincing evidence, that termination would best serve the Children's interests, pursuant to Section 2511(b). Father's claim is without merit.

In sum, we conclude the court did not err or abuse its discretion when it determined CYF established sufficient evidence to warrant the termination of Father's rights. The court properly conducted the bifurcated termination analysis, and the court's findings made pursuant to Section 2511(b) were supported by the record.

Orders affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/1/2021