J-S88033-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

IN THE INTEREST OF L.A.P., A MINOR,   :   IN THE SUPERIOR COURT OF
                                                          :           PENNSYLVANIA
                                                           :

APPEAL OF: A.P., MOTHER          :

                                                           :    No. 2129 EDA 2016

Appeal from the Decree May 27, 2016
in the Court of Common Pleas of Philadelphia County
Family Court, at No(s): CP-51-AP-0000470-2012
CP-51-DP-0000542-2010

IN THE INTEREST OF T.T.P., A MINOR,   :   IN THE SUPERIOR COURT OF
                                                           :           PENNSYLVANIA
                                                           :

APPEAL OF: A.P., MOTHER          :

                                                           :    No. 2131 EDA 2016

Appeal from the Decree May 27, 2016
in the Court of Common Pleas of Philadelphia County
Family Court, at No(s): CP-51-AP-0000469-2012
CP-51-DP-0000544-2010

BEFORE:    OLSON, RANSOM, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:         **FILED January 12, 2017**

In these consolidated appeals, A.P. (Mother) appeals from the May 27, 2016 decrees that granted the petitions of the Philadelphia Department of Human Services (DHS) to terminate involuntarily her parental rights to T.P. (born in May 2008) and L.P. (born in March 2010) (Children, collectively). We affirm.

In August 2010, DHS received a substantiated general protective services (GPS) report indicating that, *inter alia*, Mother, still a child herself,

*Retired Senior Judge assigned to the Superior Court.

was not providing Children with adequate food and housing and was not compliant with taking medication to address her mental health issues. DHS initially provided in-home protective services, but, after Mother's refusal to move out of the housing that contained lead paint and her hospitalization for suicidal ideation and an attempted drug overdose, Children were adjudicated dependent. Children were committed to the custody of DHS in December 2010.

Permanency hearings were held regularly, resulting in the continued placement of Children and retention of legal custody by DHS with Mother having supervised visitation. In September 2012, DHS filed petitions for involuntary termination of parental rights and for goal changes as to both Children. The hearing on the petitions was scheduled and continued numerous times between October 2012 and December 2014. DHS filed amended petitions in March 2015, and hearings again were scheduled and continued repeatedly. On May 10, 2016, DHS again filed amended petitions. A hearing was held on May 27, 2016, resulting in decrees terminating Mother's parental rights under subsections (a)(1), (a)(2), (a)(5), (a)(8), and (b) of 23 Pa.C.S. § 2511.

Mother timely filed notices of appeal and concise statements of errors complained of on appeal as to each Child, and the trial court authored an opinion. Mother presents the following questions for our review:

[1]. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa.C.S.[] § 2511(a)(8) where evidence was presented that [M]other is now and has been capable of caring for [C]hildren since she has matured and continues to successfully raise a sibling of [C]hildren.

[2]. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa.C.S.[] § 2511(b) where evidence was presented that [C]hildren have a bond with [] Mother and they had lived with [] Mother for the first part of their lives.

Mother's Brief at 7.[1]

We begin with our standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks

omitted).

---

[1] Mother also questions the propriety of the trial court's conclusions as to subsections (a)(1), (a)(2), and (a)(5); however, based upon our conclusion as to subsection (a)(8), we need not consider those arguments. *See In re N.A.M.*, 33 A.3d 95, 100 (Pa. Super. 2011) ("We must agree with the trial court's decision as to only one subsection of 23 Pa.C.S. § 2511(a) in order to affirm the termination of parental rights.").

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis. As we explained in *In re L.M.*, 923 A.2d 505 (Pa. Super. 2007),

> [i]nitially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.* at 511.

The governing statute provides as follows, in relevant part.

> **(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> > (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> * * *
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the

child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a) … (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

Here, Children had been out of Mother's care for nearly five years at the time DHS filed its second amended petition. The entirety of Mother's argument of trial court error under subsection (a)(8) is as follows:

> The Court in ***In the Interest of Lilley***, 719 A.2d 327, 332 (Pa. Super. 1998)[,] held that the termination petition may be granted where a parent fails to cooperate or appears incapable of benefiting from the reasonable efforts supplied over a realistic period of time, such that the agency has fulfilled its reasonable good faith efforts. Mother is now capable of caring for [C]hildren and does not require any additional programs in order to reunify with [C]hildren. Mother is successfully parenting a younger sibling [of Children] and visited [C]hildren.

> Mother has the current capacity to care for [C]hildren. Grounds do not exist to terminate [M]other's rights under subsection (a)(8) because [M]other is capable of caring for [C]hildren.

Mother's Brief at 16.

Mother's argument is meritless. First, ***Lilley*** is inapposite because subsection (a)(8) was not at issue therein. Subsection 2511(a)(8), unlike the sections at issue in ***Lilley***, represents the determination that "a parent's basic constitutional right to the custody and rearing of his … child is converted, upon the failure to fulfill … parental duties, to the child's right to

- 5 -

have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." ***In the Interest of K.Z.S.***, 946 A.2d 753, 759-60 (Pa. Super. 2008) (quoting ***In re B.N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004)). As this Court explained in a similar case:

> We recognize that the application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children. We also recognize that in a sense, the harshness may be amplified in the case *sub judice*, as Mother was [a teenager] when her first child was born. However, by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit eighteen [] months, in which to complete the process of either reunification or adoption for a child who has been placed in foster care.

***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006). In any event, Mother stipulated that DHS made reasonable efforts to serve both parents in this case. N.T., 5/27/2016, at 11. Thus, the only questions before us in the instant case are whether the conditions that led to the placement of Children still exist, and whether termination of Mother's rights are in Children's best interests.

Second, Mother's conclusory statements that she presently is capable of caring for Children are not supported by the record. Rather, the record

supports the trial court's determination that the conditions for placement still exist:

> In the instant case, [M]other did not complete her Single Case Plan (SCP) objectives. The Community Umbrella Agency (CUA) case manager testified that [M]other's SCP objectives were: 1) to monitor [C]hildren; 2) complete mental health treatment; 3) complete parenting classes; 4) complete a bonding evaluation; and 5) maintain visits with [C]hildren. N.T., 5/27/2016, at 13. [M]other did not monitor [C]hildren. Furthermore, she has never attended their medical appointments or inquired about their care. ***Id.*** at 17. Moreover, [M]other did not consistently attend mental health treatment. ***Id.*** at 13-14. [M]other did not attend parenting classes. ***Id.*** at 13. Also, [M]other did not complete a bonding evaluation. ***Id.*** [] Mother did not consistently visit with [C]hildren. ***Id.*** at 18.
>
> * * *
>
> … Moreover, the CUA case manager testified that [M]other did not demonstrate the ability to parent. The case manager was asked: "And do you think [C]hildren can be returned to her today?" He answered: "No, not today." ***Id.*** at 15. Lastly, the NET social worker testified that [M]other is not an appropriate caregiver for [C]hildren at this time. ***Id.*** at 22.

Trial Court Opinion, 8/16/2016, at unnumbered page 3 (some punctuation and citation formatting altered). Accordingly, Mother's first issue warrants no relief from this Court.

With her second issue, Mother challenges the trial court's determination that terminating her parental rights is in Children's best interests under subsection (b). Subsection (b) provides, in relevant part: "The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and

welfare of the child." 23 Pa.C.S. § 2511(b). We have explained the analysis under this subsection as follows.

> Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child. … [T]he trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (internal citations and quotation marks omitted).

Mother's argument that the requirements of subsection (b) have not been established is as follows:

> T.P. and L.P. had lived with their Mother for the first years of their lives and had a strong bond with their Mother. The social worker who testified at the [hearing] testified that there was a strong parental bond and that [M]other's visits were appropriate. Therefore, termination of Mother's rights does not serve [C]hildren's physical and emotional needs and welfare.

Mother's Brief at 17.

Mother's assertions are largely unsupported by the record. T.P., now eight years old, has not lived with Mother since age two and one half. Six-year-old L.P. has not lived with Mother since she was six months old. Mother is correct that Natalie Tadlocke, who supervised Children's visits with Mother, testified that Mother is appropriate with Children during visits; that Mother attended 51 of 63 visits scheduled with her; and that there is a bond

between Mother and T.P., the older child. N.T., 5/27/2016, at 18, 20. However, Ms. Tadlocke also testified that Mother had not been the primary caregiver for either of Children for over five years, that Mother is not an appropriate caregiver at this time, and that there is no bond at all between Mother and L.P. *Id.* at 18, 20, 22.

Further, Mother ignores that Tyrone Morris, the case supervisor, testified that Children are in a potential pre-adoptive home where they are safe and their needs are being met; that Children have suffered no detrimental impact from being separated from Mother in foster care; and that it would best serve Children's interests to free them for adoption because Mother has not "shown the ability to parent and things of that nature." *Id.* at 12, 15.

Given this record, we cannot conclude that the trial court abused its discretion in finding that the developmental, physical and emotional needs and welfare of Children will be best served by terminating Mother's rights and allowing them to find permanency. *In re T.S.M.*, 71 A.3d 251, 270 (Pa. 2013) (directing the termination of parental rights based on the children's best interests despite the children's strong bonds with their mother, and lack of bonds with foster parents, where the mother "had the benefit of services for over five years without showing the potential of being able to parent the children in any reasonable period of time").

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 1/12/2017