J-S42002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: I.J.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1707 EDA 2023 |

Appeal from the Decree Entered May 30, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000097-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: S.Y.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1708 EDA 2023 |

Appeal from the Decree Entered May 30, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000098-2023

BEFORE:  BOWES, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 19, 2023**

A.P. ("Mother") appeals from the decrees entered on May 30, 2023, involuntarily terminating her parental rights as to her two children, I.J.H., born in February 2012, and S.Y.P., born in August 2019.[1]  We affirm.

---

[1] Separately, on the same date, the trial court terminated the parental rights of S.Y.P.'s biological father, M.D.B., and changed the child's permanent
*(Footnote Continued Next Page)*

We glean the following background from the certified record. In June 2018, the Philadelphia Department of Humans Services ("DHS") filed a dependency petition on behalf of I.J.H., then eight years old, due to concerns about Mother's housing conditions and mental health. I.J.H. was subsequently adjudicated dependent on July 12, 2018. When the conditions involving Mother and her housing did not improve, I.J.H. was committed to DHS care in February 2019 and placed with a pre-adoptive foster parent, C.B.[2] I.J.H. has continued to live with C.B. since that time.

On August 13, 2019, DHS learned that Mother gave birth to S.Y.P. Based on Mother's continued unstable housing and mental health problems, as well as DHS's inability to locate S.Y.P.'s father, DHS obtained an order of protective custody for S.Y.P. two days later. S.Y.P. was placed with the same pre-adoptive resource parent as I.J.H. and has been in that person's care since S.Y.P. was discharged from the hospital at two days old.

Every five to six months since both children were placed, Mother met with representatives from Philadelphia's Community Umbrella Agency ("CUA") to discuss her single case plan ("SCP") objectives. The goal was initially for reunification of Mother and both children. Mother's objectives were to remain in mental health treatment; attend therapy once a week; comply with

_____

placement goal to adoption. We address M.D.B.'s appeals in a separate writing.

[2] C.B. previously adopted two of Mother's other children after a court involuntarily terminated Mother's parental rights. **See** N.T. Hearing, 5/30/23, at 44.

medication management; and maintain housing, employment, and visitation under CUA. *See* N.T. Hearing, 5/30/23, at 11.

On March 14, 2023, DHS filed a petition seeking to change the children's permanency goals from reunification to adoption by C.B., as well as termination of the parental rights of both Mother and M.D.B. The court held a hearing on May 30, 2023, where it heard from DHS witness Corthea Howell, a CUA case manager. Mother testified after being called by Emily Cherniak, Esquire, the court-appointed counsel and guardian *ad litem* ("GAL") for the children.[3]

Ms. Howell first testified as to the conditions triggering the need for placement and Mother's attempts to redress those issues. With regard to housing, Mother had been residing with her father. However, the home was not deemed acceptable for reunification because the maternal grandfather could not obtain child clearances based on prior sexual allegations involving children. *See* N.T. Hearing, 5/30/23, at 12, 55. Ms. Powell also attested to Mother's lengthy history of extensive mental health problems. *Id*. at 12. Mother received treatment through The Consortium, a nonprofit community mental health center in Philadelphia, but had not completed that treatment. *Id*. at 12-13, 15. Ms. Powell had concerns that despite seeking treatment,

---

[3] Further, the GAL evinced testimony establishing that there was no conflict between either child's legal or best interests. Consistent with the GAL, eleven-year-old I.J.H. had expressly indicated his desire to be adopted, and three-year-old S.Y.P. was too young to express her wishes. *See* N.T. Hearing, 5/30/23, at 45-46.

Mother still "demonstrate[d] explosive behaviors," including ones that led to criminal charges being filed. *Id*. at 15. Most recently, Mother was charged with aggravated assault against S.Y.P.'s father, M.D.B., but resolved the matter after pleading guilty to criminal mischief and simple assault. *Id*. at 18, 54. Overall, Ms. Powell rated Mother's compliance with her SCP goals as "moderate," because while Mother did maintain weekly visits and attendance at therapy, she still had inappropriate housing and additional arrests. *Id*. at 21-22.

Ms. Powell also testified as to the relationship between Mother and the children. Since 2022, Mother has never called to see how the children were doing, nor did she provide any financial support to the children other than through gifts and food during visits. *Id*. at 22. Similarly, since that time, she never attended doctor's appointments or special services for the children. *Id*. at 22, 46. Mother's relationship with I.J.H. was compared to that as between peers. *Id*. at 27. While I.J.H. acknowledged Mother as a parent, he treated her more like a big sister. *Id*. at 28. Mother did not know how to redirect him when he was distracted or did not wish to participate during a visit. *Id*. at 31. Mother was akin to a big sister to S.Y.P., as well. *Id*. at 32. Ms. Powell opined that there would be no irreparable emotional harm for either child if Mother's parental rights were terminated. *Id*. at 30-32.

Finally, Ms. Powell spoke to the relationship between the children and the pre-adoptive foster parent, C.B. I.J.H. has been under C.B.'s care since 2018, whereas S.Y.P. has been so nearly her entire life. *Id*. at 35. C.B.

continued to meet the basic needs of both children. *Id*. Both called the C.B. "mom," and they shared their primary parental bond with her. *Id*. at 35-36. Ms. Powell believed that it was in the best interest of the children that Mother's parental rights to be terminated, to free them for adoption. *Id*. at 36. After Ms. Powell's testimony, the GAL advanced the same position.

At the conclusion of the hearing, the trial court articulated that it was granting DHS's petition for the goal change and termination of Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8), as well as § 2511(b). It also issued a decree at each of the respective dockets the same day. Mother filed timely notices of appeal,[4] and both she and the trial court complied with Pa.R.A.P. 1925.[5] We consolidated the matters *sua sponte*.

Mother presents the following three issues for our consideration:

1. Whether the trial court committed reversible error, when it involuntarily terminated Mother's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8).

2. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would

---

[4] Mother's notices purported to appeal both the termination decree and the goal change order. We observe that Mother neither attached the challenged goal change order to the notices of appeal nor contested the merits of the goal change in her brief. Hence, we do not address that challenge herein.

[5] The trial court entered a notice of compliance with Rule 1925(a), referring us to relevant portions of the transcript from the termination hearing, wherein the court stated on the record its reasoning for its findings.

have on the developmental, physical, and emotional needs of the child as required by the Adoption Act, 23 Pa.C.S. § 2511(b).

3. Whether the trial court erred because the evidence was overwhelming and undisputed that Mother demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with his [*sic*] child.

Mother's brief at 11 (cleaned up).[6]

We begin with the applicable standard of review.

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but it does not require the appellate court to accept the lower court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the trial court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. However, we must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

---

[6] We note with displeasure that while Mother lists three issues on appeal, she offers only a single argument section of the brief, in violation of Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein"). Counsel is cautioned to abide by the Rules of Appellate Procedure in the future.

*In re Adoption of C.M.*, 255 A.3d 343, 358–59 (Pa. 2021) (cleaned up). We note that the trial court "is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). Further, "if competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

Before terminating parental rights, our case law mandates that the court engage in a bifurcated process. *In re C.L.G.*, 956 A.2d 999, 1004 (Pa.Super. 2008) (citations omitted). More particularly,

> the focus is [initially] on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only after determining that the parent's conduct warrants termination of his or her parental rights must the court engage in the second part of the analysis: determination of the needs and welfare of the child under the standard of best interests of the child.

*Id*. (citations omitted). The bases for termination must be proven by clear and convincing evidence, or evidence "that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Int. of M.E.*, 283 A.3d 820, 831 (Pa.Super. 2022) (citation omitted).

Mother's first challenge concerns whether DHS met its burden of proving any one of the subsections of § 2511(a). We note that we "need only agree

- 7 -

with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). We focus our discussion on § 2511(a)(8), which provides as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>         . . . .
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(8).

We have interpreted this subsection to require proof of three distinct elements before a court may terminate parental rights:

> (1) that the child has been removed from the care of the parent for at least twelve months; (2) that the conditions which had led to the removal or placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child.

*In re C.L.G.*, *supra* at 1005 (cleaned up).

In finding that DHS proved § 2511(a)(8), the trial court noted that I.J.H. had been removed from Mother for four and one-half years and S.Y.P. for slightly less than four years, since her birth in August 2019. *See* N.T. Hearing, 5/30/23, at 88. As to the conditions that led to removal of the children, the

court stated that the two biggest issues Mother faced were her failure to procure adequate housing and to fully comply with treatment. *Id*. at 86. It found that there was no indication that Mother's living situation had improved or that she completed her necessary mental health treatment. *Id*. at 89. The court also determined that Mother "has repeatedly engaged in the same type of anger issues which led to her most recent arrest last year and her pleading guilty to simple assault in April of this year." *Id*. It concluded that it would be in the best interest of the children to terminate parental rights so that they may be given permanency with the pre-adoptive resource parent.[7] *Id*. at 88-89.

Mother argues that termination was not proper because she addressed the primary concerns of DHS, namely her unstable housing and mental health problems. *See* Mother's brief at 13. She contends that she has maintained stability in her life, living at the address where her father and siblings reside. *Id*. at 16. Mother also avers that she has been receiving therapy since 2012, treating with The Consortium on a weekly basis, and has seen a psychiatrist once a month. *Id*. at 15, 16. She asserts that DHS's SCP objectives required only that she remain in treatment, attend therapy once a week, and comply

---

[7] For its part, DHS agrees with the trial court that it met its burden at to each implicated subsection of 23 Pa.C.S. § 2511. DHS also encourages us to find that Mother waived all challenges on appeal for failing within her brief to sufficiently connect her legal arguments to facts from the record. *See* DHS's brief at 14-18. While we agree that Mother failed to proffer a comprehensive argument, in light of her recitation of relevant facts and citation to pertinent authority, her brief is not so defective that it precludes our review. Therefore, we reject DHS's request to find all of the issues waived on this basis.

with medication management, which she has done. *Id*. at 13. Although she did not complete treatment, Mother believes this is immaterial, since completion was not a listed objective for reunification. *Id*. at 15-16.

Upon review, we find that the court did not abuse its discretion in finding that DHS proved § 2511(a)(8) by clear and convincing evidence. The first element is satisfied, as it is undisputed that I.J.H. and S.Y.P have been removed from Mother's care for more than twelve months. Second, the conditions that led to placement, *i.e.*, Mother's inadequate housing and mental health concerns, continue to exist. Although Mother has steadily resided with maternal grandfather, she has nonetheless been on notice that his home is not approved for reunification because he cannot secure the necessary child clearances. There was no evidence that Mother has undertaken any steps to secure alternative housing that would be appropriate for I.J.H. and S.Y.P.

Moreover, while it appears that Mother made consistent efforts concerning treatment of her mental health problems, it is evident that the trial court did not believe they were resolved. The testimony bore out that as a best-case scenario, Mother could not hope for successful discharge from her treatment for at least another seven months from the date of the hearing. *See* N.T. Hearing, 5/30/23, at 63. Despite being in treatment, Mother's issues have nonetheless led to several arrests since the dependency proceedings began, most recently amounting to aggravated assault charges based on an incident involving S.Y.P.'s father.

Finally, as will be addressed in additional detail below, the best interests of the children would be to stay with the pre-adoptive foster parent, C.B., who continues to meet the needs of both children. Through adoption, both I.J.H. and S.Y.P. will be able to live with their older siblings that have previously been adopted by C.B. It was uncontested that since 2022, Mother has not been engaged in the educational, medical, or special needs of the children, and she has not contributed financially to either child outside of gifts and food during supervised visits. In short, Mother remains unable to perform her parental duties.

Since all of the elements of § 2511(a)(8) are satisfied, Mother's challenge warrants her no relief.

Mother next asserts that DHS failed to meet its burden as to § 2511(b). In whole, that provision provides as follows:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6), or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

Our Supreme Court has recently framed the analysis of this provision thusly:

[C]ourts should consider the matter from the child's perspective, placing her developmental, physical, and emotional needs and welfare above concerns for the parent.

Accordingly, the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis. We have observed the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. Thus, the court must determine each child's specific needs.

Moreover, the child's emotional needs and welfare include intangibles such as love, comfort, security, and stability. As further guidance, we have identified factors, *i.e.*, specific needs and aspects of the child's welfare, that trial courts must always consider. The court must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents. And, if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task.

*Int. of K.T.*, *supra* at 1105–06 (cleaned up).

We have noted that "the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010) (cleaned up). If there is a bond, "the trial court must examine whether termination of parental rights will destroy a necessary and beneficial relationship[.]" *Int. of M.E.*, *supra* at 837 (cleaned up). Additionally, while termination of parental rights has "heavy and irrevocable consequences," it is "intended to prevent children from growing up in an indefinite state of limbo, without parents capable of caring for them, and at the same time unavailable for adoption by loving and willing foster families." *Int. of K.T.*, *supra* at 1111 (cleaned up).

As to this subsection, the trial court found that there was no parental bond between Mother and the children. *See* N.T. Hearing, 5/30/23, at 89. It highlighted that I.J.H. called Mother by her first name, not "mom," and that Mother did not provide for any medical or educational needs for either child throughout the life of the entire case. *Id*. at 90. The court found credible the testimony from Ms. Powell that Mother has a sibling-like relationship with both children. *Id*. It noted that neither child looked to Mother for fulfillment of any of their parental needs. *Id*.

In response, Mother contends that she attested to the existence of a bond between her and the children and that she has an amazing relationship with them. *See* Mother's brief at 14. She highlights her own testimony that the children are playful with her and that I.J.H. loves when she brings food, toys, and gifts. *Id*. Mother also notes that the children have referred to her as "mom," based on testimony from prior permanency hearings. *Id*. Finally, she iterates that I.J.H. has stated that he misses seeing his maternal grandmother, and accordingly termination of the bond will harm him. *Id*.

After consideration, we find no error with the court's conclusion that § 2511(b) was satisfied. Mother's entire argument is premised upon the existence of a bond between her and the children, which the trial court did not find. To the extent that Mother contests factual findings of the court, such as whether either child refers to Mother as "mom," the court was free to resolve all such conflicts. *See In re M.G. & J.G.*, supra at 73-74. Since the court's

determination that there was no bond between the children and Mother is supported by the record evidence, we will not disturb it.

Furthermore, assuming *arguendo* that there was an existing bond between Mother and the children, Mother has not argued, and therefore not convinced us, that any such relationship is necessary or beneficial to either child. The court's acceptance of Ms. Powell's testimony established that Mother acts merely as a peer to the children and has not met the parental needs of either child. As such, neither child would suffer "extreme emotional consequences" should the relationship between them and Mother be severed. ***Int. of M.E.***, ***supra*** at 837.

Moreover, termination of Mother's parental rights is proper due to the clear parental bond that has developed between I.J.H., S.Y.P., and C.B., the pre-adoptive foster parent. C.B. has attended to all of the educational, medical, and special needs of the children. Both children refer to her as "mom." C.B. has also already adopted two of the children's siblings, which will allow them to partially remain an intact family. Accordingly, there is substantial evidentiary support for the determination that should either child be removed from foster placement, it will cause them substantial harm.

Therefore, the trial court did not abuse its discretion in finding that DHS proved § 2511(b) by clear and convincing evidence.[8]

_____

[8] Mother's third issue on appeal is that termination was improper because Mother "demonstrated a genuine interest and sincere, persistent, and
*(Footnote Continued Next Page)*

- 14 -

Based on the foregoing, we affirm the decrees terminating Mother's parental rights as to I.J.H. and S.Y.P.

Decrees affirmed.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/19/2023

---

unrelenting effort to maintain a parent-child relationship with his [*sic*] child." Mother's brief at 11. Although this is raised as a separate claim, as noted above, Mother combines all her arguments into a single section of her brief. Since we have found that DHS proved by clear and convincing evidence that termination of parental rights was proper pursuant to § 2511, we need not separately address this issue.