J-S30017-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.J.R.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.A., MOTHER | : | |
| | : | |
| | : | No. 691 MDA 2024 |

Appeal from the Decree Entered April 16, 2024
In the Court of Common Pleas of York County
Orphans' Court at No(s): 2024-0025a

| | | |
|---|---|---|
| IN THE INTEREST OF: L.M.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.A., MOTHER | : | |
| | : | |
| | : | No. 692 MDA 2024 |

Appeal from the Decree Entered April 15, 2024
In the Court of Common Pleas of York County
Orphans' Court at No(s): 2024-0024a

BEFORE: PANELLA, P.J.E., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.: **FILED: OCTOBER 7, 2024**

S.A. ("Mother") appeals from the decrees involuntarily terminating her

parental rights to her biological son L.J.R.A., born April of 2018, and biological

---

[*] Former Justice specially assigned to the Superior Court.

daughter L.M.A., born September of 2015 (collectively, "the Children").[1]  We affirm.

The factual and procedural history of this case follows.  The York County Office of Children, Youth, and Families ("CYF") first became involved with this family in 2019 due to concerns of substance abuse by Mother and Father (collectively, "Parents") and domestic violence.  *See* N.T., 4/15/24, CYF Ex. 1 (1/13/21 permanency plan) at 2.[2]  CYF initiated services for the family and ultimately closed them approximately fourteen months later.  *See id*.  In July 2022, CYF received another report containing similar allegations.  *See* N.T., 4/15/24, at 91.  Subsequently, Mother tested positive for fentanyl and methamphetamines, and CYF's investigation validated the concerns noted in the report against Parents.  *See* Trial Court Opinion, 6/5/24, at 4; *see also* N.T., 4/15/24, CYF Ex. 1 (9/1/22 permanency plan) at 2.  CYF implemented a safety plan, but it was soon violated by Father driving while impaired with the Children in the vehicle, after which Mother locked herself in their home with the Children.  *See* Trial Court Opinion, 6/5/24, at 5; *see also* N.T. 4/15/24,

_____

[1] Upon review of the certified docket, the trial court involuntarily terminated the parental rights of the Children's father, D.A. ("Father"), by separate decrees.  Father did not file notices of appeal.

[2] The record shows that at some point during the relevant time, Mother obtained a Protection from Abuse order against Father.  *See*, *e.g.*, N.T., 4/15/24, at 106; *see also id*., CYF Ex. 2 at 6.

at 91. Shortly after this incident, the Children, at ages four and six, were placed in the emergency custody of CYF in August 2022. **See** N.T. 4/15/24, at 91.

The trial court adjudicated the Children dependent on August 11, 2022, and placed them in kinship care. **See** N.T., 4/15/24, CYF Ex. 1 (9/1/22 permanency plan at 2). The court established the Children's respective permanency goals as reunification. In furtherance of that goal, Mother was ordered to: complete a drug and alcohol evaluation and follow all recommendations; participate in drug testing; complete a domestic violence evaluation and follow all recommendations; and complete a mental health evaluation and follow all recommendations. **See id**. at 14-16. In addition, Mother was required to participate in supervised visitation with the Children. **See**, **e.g.**, N.T., 4/15/24, at 51. The trial court held permanency review hearings at regular intervals throughout the dependency proceedings. Throughout the dependency proceedings, the Children were placed in three different homes before being placed with their maternal aunt, B.A., and her husband, M.H. **See Interest of L.A.**, 180 MDA 2024, 181 MDA 2024, 2024 WL 3494534 (Pa. Super. Jul. 22, 2024) (unpublished memorandum).[3]

_____

[3] As discussed **infra**, the trial court later changed the Children's permanency goal from reunification to adoption. Mother filed an appeal from the goal
*(Footnote Continued Next Page)*

Regarding Mother's drug and alcohol issues, we note the following: Mother completed the evaluations required by her permanency plan. With respect to her drug and alcohol evaluation, Mother complied with the recommendations following her evaluation by participating in treatment through Rehab After Work and the RASE Project throughout the dependency matters. **See** N.T., 4/15/24, at 98.[4] Mother attended JusticeWorks for her court-ordered drug testing. She tested positive for methamphetamines in July 2023. **See id**. at 142-143. In September 2023, the trial court ordered Mother to complete toenail testing due to her "long history of gamesmanship" with CYF's drug testing. **See** Trial Court Opinion, 6/5/24 at 5 n.3.[5] However, Mother cut her fingernails and toenails immediately before her scheduled appointment, so the lab was unable to complete the test. **See id**. at 5; **see also** N.T., 4/15/24 at 19. During the Children's dependency proceedings,

_____

change orders, which this Court affirmed. **See generally Interest of L.A.**, 2024 WL 3494534.

[4] Relatedly, Mother was previously employed as a nurse before she lost her nursing license due to her substance abuse. **See** N.T., 4/15/24, at 137, 152. After the Children were removed from Mother's care, Mother's RASE project caseworker assisted her in working to, *inter alia*, regain her nursing license. **See id**. at 152. The record suggests that Mother's nursing license had not been reinstated at the time of the termination proceeding. **See id**. at 137-138, 152.

[5] The trial court explained that toenail testing could give the court a "look back" to substance use from the prior three to six months. N.T., 4/15/24 at 17.

Mother reported two drug relapses to her caseworker at RASE project. ***See*** N.T., 4/15/24, at 152-55, 159-60. Additionally, Mother admitted to her most recent relapse when she tested positive for methamphetamines in March 2024, the month before the termination proceeding. ***See id***. at 172.

As for Mother's domestic violence permanency goals, the record shows that Mother completed a domestic violence evaluation. According to a CYF caseworker, Shania Wright ("Wright"), Mother was required to participate in domestic violence classes; however, Mother admitted that she failed to do so. ***See id***. at 92, 172-73. Wright testified that CYF remained concerned about Mother's ongoing relationship with Father and the potential for domestic violence. ***See id***. at 96, 99. Wright noted that Parents were arrested together in December 2023 for retail theft. ***See id***. at 93; ***see also id***., CYF Ex. 2 at 6.

The record reveals the following about Mother's visitation with the Children. Mother was granted unsupervised visitation with the Children on December 14, 2022. ***See*** N.T., 4/15/24, CYF Ex. 1 (2/12/23 permanency plan) at 2. However, on the first weekend of her unsupervised visitation, Mother allowed Father to have in-person contact with the Children despite his visits being ordered to remain supervised. ***Id***. Mother's visitation with the Children returned to supervised up through and including the time of the termination hearing. ***See*** N.T., 4/15/24, at 97-98. Mother participated in

supervised visits once a week with the Children since at least March 2024. *See id*. at 69. The record shows that Mother's visitation consistently went well. *See generally* N.T., 4/15/24, CYF Ex. 1; *see also* N.T. 4/15/24 at 46-47. The Children were happy to see Mother and engaged positively with her. *See id*. at 46-47.

As noted above, the Children were placed with kinship parents, a maternal aunt, B.A., and her husband, M.H. M.H. testified that he and B.A. loved the Children "very much," and that the Children get along well with kinship parents' children, an eight-year-old daughter and 19-month-old son. *See id*. at 77, 84. M.H. takes the Children to most of their appointments. *See id*. at 86. Kinship parents prophylactically placed the Children in therapy to manage any difficulties that might arise for the Children in the event they are adopted. *See id*. at 77-78. Kinship parents, additionally, expressed their desire to facilitate safe, healthy, and appropriate relationships between the Children and their biological parents. *See id*. at 85. CYF caseworker Wright opined that "the [C]hildren are in kinship . . . and they are in a home and family[,] and they've built a stable consistent home environment for the children." *Id*. at 102.

In December 2023, the trial court changed the Children's permanency goals from reunification to adoption following a hearing. *See* Trial Court Opinion, 6/5/24, at 2. In February 2024, CYF filed petitions for the involuntary

termination of Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). The involuntary termination proceeding occurred on April 15, 2024. The Children, then ages six and eight, had been in care for twenty months at the time of the hearing. The Children's best interests were represented by their court-appointed guardian *ad litem* ("GAL"), Daniel Worley, Esquire. The Children's legal interests were represented by court-appointed counsel, Kristina Forrey, Esquire.[6]

CYF presented the following witnesses in support of its petition to involuntarily terminate Mother's parental rights: Linda Tirado-Lopez ("Tirado-Lopez"), Mother's drug tester from JusticeWorks; Jessica Myers ("Myers"), visitation supervisor from Pressley Ridge; M.H., kinship parent and husband of paternal aunt B.A.; and Wright, the CYF caseworker. Mother testified on her own behalf and presented the following witnesses: Bruce Norton ("Norton"), a representative from Families Renewed, which is an organization that helps families in crisis; Sheila King-Miller ("King-Miller"), a representative from TrueNorth Wellness, who provided dialectical behavior therapy for Mother; and Kelsey Myers ("Myers"), Mother's previous caseworker from RASE

---

[6] Attorney Forrey was appointed counsel for the Children as to the termination proceedings by orders of the court dated February 26, 2024. Because separate counsel was appointed for the termination proceeding, 23 Pa.C.S.A. § 2313(a) is satisfied. *See In re K.M.G.*, 240 A.3d 1218, 1238 (Pa. 2020) (holding appellate courts should engage in "limited *sua sponte* review" concerning a child's statutory right to counsel in the termination context).

Project, who worked with Mother on various goals including her recovery from substance abuse. Additionally, following Mother's request, the court interviewed the Children *in camera* separately and in the presence of their GAL and legal counsel. **See** N.T., 4/15/24, at 8-10, 56.[7] At the hearing, the trial court heard the evidence summarized above.

By decree dated April 15, 2024, and entered on April 16, 2024, the trial court terminated Mother's parental rights to L.J.R.A. pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). By decree dated and entered on April 15, 2024, the court terminated Mother's parental rights to L.M.A. pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). Mother timely filed notices of appeal and she and the trial court complied with Pa.R.A.P. 1925.

On appeal, Mother presents the following issue for our review:

_____

[7] All counsel, including legal counsel for Mother and the Children, agreed that the Children would not testify at the termination hearing. **See** N.T., 4/15/24, at 8-10. Mother, however, requested that the Children be removed from school and brought to testify despite all counsels' recommendation. **Id**. As discussed further below, the trial court concluded that the Children's testimony, in which they stated they desired to return to live with Mother, was the product, to some extent, of coaching by Mother.

Additionally, the trial court incorporated and admitted "all prior testimony, exhibits, petitions, and orders filed" in the Children's dependency docket at the termination hearing without objection. **See** N.T., 4/15/24, at 7-8. However, no exhibits from the Children's dependency matters were included in the certified record for the present appeals.

> Whether the [trial] court erred as a matter of law and/or abused its discretion[,] as [CYF] failed to meet its burden to terminate Mother's parental rights.

Mother's Brief at 5 (unnecessary capitalization omitted).[8]

Our standard of review is as follows: in this context, we consider whether the trial court's order is supported by competent evidence. ***See In re Adoption of C.M.***, 255 A.3d 343, 358 (Pa. 2021). In applying this standard, appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record. ***See Interest of S.K.L.R.***, 256 A.3d 1108, 1123 (Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." ***In re Adoption of L.A.K.***, 265 A.3d 580, 591 (Pa. 2021).[9]

Pennsylvania's Adoption Act ("the Act") governs involuntary termination of parental rights proceedings. ***See*** 23 Pa.C.S.A. §§ 2101-2938. Subsection

---

[8] CYF, the Children's GAL, and the Children's legal counsel filed a joint brief in support of affirming the decrees.

[9] "An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion," or "the facts could support an opposite result." ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012). Instead, an appellate court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id***. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings. ***See Interest of S.K.L.R.***, 256 A.3d at 1123-24.

2511(a) provides grounds for the involuntary termination of parental rights. If the trial court finds clear and convincing evidence supporting the existence of one of the grounds for termination set forth in subsection (a), the court must then consider whether termination would best serve the child under subsection (b). **See id**., § 2511(b). This Court need only agree with one of the grounds set forth in subsection (a) to affirm, provided subsection (b) is also satisfied. **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004).

Instantly, the trial court terminated Mother's parental rights pursuant to, *inter alia*, section 2511(a)(2) and (b),[10] which provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> * * * *

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

---

[10] The trial court noted in its opinion that while CYF sought termination pursuant to section 2511(a)(2), the transcript includes the court terminating under section 2511(a)(9), which was a stenographer's error. **See** Trial Court Opinion, 6/5/24, at 32-33. As noted above, CYF did not petition for termination pursuant to section (a)(9), and Mother does not dispute the error inasmuch as she cites as a grounds for termination section 2511(a)(2), and not section 2511(a)(9), in her brief.

* * * *

> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. . . ..

23 Pa.C.S.A. § 2511(a)(2), (b).[11]

The grounds for termination of parental rights under section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; those grounds may also include acts of refusal and incapacity to perform parental duties. **See In re S.C.**, 247 A.3d 1097, 1104 (Pa. Super. 2021), *abrogated on other grounds by **Interest of K.T.***, 296 A.3d 1085, 1110 n.23 (Pa. 2023). Section 2511(a)(2) "emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being," especially "where disruption of the family has already occurred and there is no reasonable prospect for reuniting it." **In re Z.P.**, 994 A.2d 1108, 1117 (Pa. Super. 2010) (citation and emphasis omitted).

---

[11] As this Court need only agree with the trial court's determination as to any one subsection of section 2511(a), in addition to section 2511(b), in order to affirm termination, **see Interest of M.E.**, 283 A.3d 820, 830 (Pa. Super. 2022) (citing **In re B.L.W.**, 843 A.2d at 384), we need not consider Mother's arguments with respect to section 2511(a)(1), (5), and (8).

We have long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *See In re Adoption of M.A.B.*, 166 A.3d 434, 443 (Pa. Super. 2017). At a termination hearing, the trial court may properly reject as untimely or disingenuous a parent's vow to follow through on necessary services when the parent failed to co-operate with the agency or take advantage of available services during the dependency proceedings. *See In re S.C.*, 247 A.3d at 1105.

If the trial court concludes that adequate grounds for termination exist pursuant to section 2511(a), the court then turns to section 2511(b), which requires that it "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b); *see also In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). Our Supreme Court has generally outlined this inquiry as follows:

> [C]ourts should consider the matter from the child's perspective, placing her developmental, physical, and emotional needs and welfare above concerns for the parent.
>
> Accordingly, the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis. We have observed the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. Thus, the court must determine each child's specific needs.
>
> Moreover, the child's emotional needs and welfare include intangibles such as love, comfort, security, and stability. As

further guidance, we have identified factors, *i.e.*, specific needs and aspects of the child's welfare, that trial courts must always consider. The courts must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents. And, if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task.

*Interest of K.T.*, 296 A.3d at 1105-06 (internal citations, quotations, and footnotes omitted). The Court further explained that "[i]t is only a necessary and beneficial bond, after all, that should be maintained." *Id*. at 1109. The Court recognized that "case law indicates that bond, plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the Section 2511(b) analysis." *Id*. The extent of the "bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). It is within the province of the trial court to "consider the totality of the circumstances when performing a needs and welfare analysis." *Interest of M.E.*, 283 A.3d at 839.

In considering the affection which a child may have for his or her natural parents, this Court has stated the following:

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and

- 13 -

abuse, is able to sift through the emotional wreckage and completely disavow a parent. . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists.   The psychological aspect of parenthood is more important in terms of the development of the child and its mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted).  Further, this Court has clarified that it is "within the discretion of the [trial] court to prioritize the safety and security" of children "over their bonds with their parents." *Interest of M.E.*, 283 A.3d at 839.  Thus, we will not disturb such an assessment if the trial court's factual findings are supported by the record.  *See id*.

Mother challenges the sufficiency of the evidence supporting the trial court's termination decrees pursuant to section 2511(a)(2) and (b).  *See* Mother's Brief at 16-28.  We note that Mother does not assert any specific arguments as to how the trial court erred and/or abused its discretion as to section 2511(a)(2).  *See id*. at 16-20.[12]  As such, we deem her challenge to the sufficiency of termination pursuant to section 2511(a)(2) waived.  *See In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa. Super. 2017) (reiterating that a

_____

[12] In the argument section, Mother simply states the law as to section 2511(a)(2) and moves right into the law for section 2511(a)(5) without any specific arguments for section 2511(a)(2).  *See* Mother's Brief at 19-20.

claim is waived where an appellate brief fails to provide any discussion of the claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review).

However, even if Mother had not waived this issue, we would conclude that the trial court did not abuse its discretion in terminating Mother's parental rights pursuant to section 2511(a)(2). The trial court concluded that Mother failed to progress beyond supervised visitation; and demonstrated her continued incapacity, neglect, or refusal to provide for the Children's needs by, *inter alia*, failing to control her drug use. **See** Trial Court Opinion, 6/5/24, at 34, 37-38.

The court's findings are supported by the record evidence. It is well-established that Mother suffers from repeated and continued incapacities, namely, her substance abuse troubles, including several methamphetamine relapses up to March 2024. **See** N.T., 4/15/24, at 92, 96, 142-43, 152-53, 155, 172. She failed to address the domestic violence in her ongoing relationship with Father, insofar as she did not complete domestic violence classes. **See** N.T., 4/15/24, at 92, 94, 172-73. Wright, the CYF caseworker, testified that Mother's progress with her permanency objectives were minimal at the time of the termination proceeding due to "ongoing substance abuse" and concerns that Parents continue to be in a relationship. **See id**. at 96, 101-02. Additionally, Wright testified that outside of visitation, Mother has

not performed any parental duties for the Children in the past twelve months. *See id*. at 101.[13] Wright further testified that she could think of no other services CYF could have afforded to Mother and, despite the services offered, she only made minimal progress after twenty months. *See id*. at 92, 96, 100, 102.[14] Thus, the record supports the trial court's conclusion that Mother's incapacities have caused the Children to be without essential parental care, control, and subsistence, and Mother's incapacities cannot or will not be remedied.

We now turn to Mother's challenge to the trial court's findings pursuant to section 2511(b), which affords primary consideration of the developmental,

_____

[13] To the extent that Mother contends she has performed her parental duties by visiting the Children, bringing them food, gifts, and clothing, we reject her assertion of error because our review of the record shows that Mother made minimal progress in satisfying her permanency requirements for twenty months leading up to the termination hearing. *See* N.T., 4/15/24, at 92, 96, 102.

[14] Indeed, the record shows various reported relapses and positive tests for methamphetamine in the months leading up to the termination hearing, the most recent being after the involuntarily termination of parental rights petition had been filed and just one month before the termination hearing which Mother admitted to in her testimony. *See id*. at 142-43, 152-53, 155, 159-60, 172.

While Mother asserts that domestic violence has been addressed because she and Father live separately, there was ample evidence in the record to support the trial court's conclusion that the domestic violence has not been addressed. *See* N.T., 4/15/24, at 90, 93, 96, 106, 173-74; *see also* CYF Ex. 2.

physical, and emotional needs and welfare of the Children. ***See*** 23 Pa.C.S.A. § 2511(b). Specifically, Mother argues that the evidence is insufficient to support the court's finding that her relationship with the Children is "toxic." Mother's Brief at 27-28. Mother asserts, to the contrary, that her bond with the Children is strong. ***See id***. at 28.

The trial court considered Mother's arguments and concluded termination was in the Children's best interests. While the trial court acknowledged that there are "bonds of sorts" between Mother and the Children, ***see*** Supplement to Trial Court Opinion, 6/19/24, at 2, the court concluded that the bond is "toxic." ***See*** N.T., 4/15/24, at 187; Supplement to Trial Court Opinion, 6/19/24, at 3. The court's conclusion is based on finding that the Children's testimony regarding their desire to return home was not genuine but manufactured and unreliable due to Mother's attempted manipulation of the Children's desires. ***See*** Supplement to Trial Court Opinion, 6/19/24, at 3-4. The trial court also found that the Children have a strong and healthy primary bond to the kinship parents. ***See*** N.T., 4/15/24, at 187; Supplement to Trial Court Opinion, 6/19/24, at 4. The trial court concluded that intangibles, including the Children's safety and need for permanency, trumped the bond that existed between Mother and the Children.

Initially, we note that, Myers, the visitation supervisor at Pressley Ridge, when asked at the termination hearing about the Children's bond with Mother,

testified that "the [C]hildren are happy to see [M]other. They engage positively together. It's a positive experience in the visit." *See* N.T., 4/15/24, at 46. We consider next the Children's testimony. L.J.R.A., then age six, testified that he likes living with his kinship parents, they take good care of him, they love him, and he loves them. *See* N.T., 4/15/24, at 61. He also testified that he likes visits with Mother. *See id*. L.J.R.A. testified affirmatively when asked if he was "good to go back with" his kinship parents, but he "want[s] to go home . . . with mommy and dad" because he loves them, and their family dog, Boomer, is there. *Id*. at 62. Notably, **L.J.R.A. disclosed that Mother "did tell me . . . to tell the judge . . . if you want to go home." Id**. at 63 (emphasis added). When asked whether L.M.A. also told him to tell the judge this information, L.J.R.A. shook his head no and responded affirmatively that just Mother told him what to say to the judge. *See id*. at 63-64. L.M.A., then age eight, testified that Mother told her she was in court today "to see if I'm going to get adopted." *Id*. at 66-67. She testified that she loves both Parents and kinship parents and knows that they love her too. *See id*. at 70. Her testimony showed that she likes seeing Mother. *See id*. at 69. **L.M.A. testified that Mother told her "[t]ell the**

*judge . . . you want to go home. I do want to go home."* *Id*. at 73 (emphasis added).[15]

Following our review, we discern no abuse of discretion by the trial court in finding the bond between Mother and the Children was not necessary and beneficial; that the Children were bonded to their kinship parents; and that termination was in the Children's best interests. While the Children harbor affection for Mother, which is evident from their testimony, and have positive experiences during their visitation, this is not sufficient to find a necessary and beneficial bond between parents and children. *See* N.T., 4/15/24, at 61-62, 69-70; *see also In re K.K.R.-S.*, 958 A.2d at 535. Indeed, the best interests analysis includes a child's bond with the biological and foster parents, as well as the child's need for permanency, stability, and the intangibles

---

[15] The trial court found that while the Children had a sincere desire, to some degree, to return to Mother, Mother had "coached and instructed" the Children how to testify. *See* N.T., 4/15/24, at 187. The trial court based its finding on concrete observations, such as, when the court asked L.M.A. who told her the termination proceeding was an adoption proceeding, L.M.A did not immediately disclose that it was Mother, but then admitted it had in fact been Mother, after which the court observed, "And all the time up until I asked that question[,] we were looking at one another, but when I asked you who told you that, you started looking everywhere else. Your mom told [you] that information. So I know when I am getting lied to." *Id*. at 67. This Court is unable to overturn the trial court's credibility determinations. *See In re Adoption of S.P.*, 47 A.3d at 826 (providing that, "[a]s in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record").

necessary for the child's developmental, physical, and emotional needs and welfare. *See Interest of K.T.*, 296 A.3d at 1105-06, 1109. Here, there is no dispute that the Children had been in care for twenty months at the time of the termination hearing. Within those twenty months, the Children had been in three different kinship placements.[16] As the trial court found, and the record evinces, the Children have a strong and healthy primary bond to the kinship parents. *See* N.T., 4/15/24, at 187 (trial court's finding); *id*. at 102 (Wright testifying that the kinship parents have built a stable, consistent home for the Children, and the Children are bonded to the kinship parents' biological children who also reside in the home); Supplement to Trial Court Opinion, 6/19/24, at 4. For the foregoing reasons, we discern no abuse of discretion or error of law in the trial court's conclusion that CYF met their evidentiary burden pursuant to section 2511(b).

---

[16] As noted above, the Children's placement with their current kinship parents is pre-adoptive.

Decrees affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/7/2024