J-A19043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF N.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: M.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 406 WDA 2025 |

Appeal from the Order Entered March 31, 2025
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  2025 OA 006

| | | |
|---|---|---|
| IN RE: ADOPTION OF M.J.J.D.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.V.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 407 WDA 2025 |

Appeal from the Order Entered March 31, 2025
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  2025 OA 008

| | | |
|---|---|---|
| IN RE:  ADOPTION OF S.K.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  M.V.S, MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 408 WDA 2025 |

Appeal from the Order Entered March 31, 2025
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  2025 OA 007

BEFORE:  BOWES, J., STABILE, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:                           **FILED: AUGUST 11, 2025**

M.V.S. ("Mother") appeals from the orders terminating involuntarily her parental rights to M.J.J.D.S., born in May 2011; S.K.S., born in June 2012; and N.B., born in October 2019.[1]  We affirm.

Greene County Children and Youth Services ("CYS") has a lengthy history with Mother, which included a prior placement for M.J.J.D.S. and S.K.S. in 2014.  Pertinent to the instant appeal, CYS took custody of all three children in October 2023, due to concerns for parental drug abuse.  Since the children had already been removed from Mother's home in July as part of a safety plan, they remained in the following kinship placements:  M.J.J.D.S. and S.K.S. with maternal grandmother, and N.B. with her paternal aunt and uncle.  In December, the children were adjudicated dependent.  Thereafter, S.K.S. was transferred to be with N.B. at the home of her paternal aunt and uncle.  The children remained in those pre-adoptive placements at the time of the termination hearing and have thrived in those homes.[2]  **See** N.T. Hearing, 3/25/25, at 12-13, 127.

The court ordered Mother to complete a drug and alcohol evaluation and to follow all recommendations, submit to random drug screens, comply with

_____

[1] We consolidated these appeals *sua sponte*.  The children's individual fathers each signed consents to adoption and are not participating in Mother's appeals.

[2] N.B. and M.J.J.D.S. had been in their pre-adoptive homes for the entire seventeen months, whereas S.K.S. had been with N.B.'s paternal aunt for twelve months.

the safe parenting and family reunification programs, and maintain appropriate housing. *Id*. at 20. Nonetheless, she continued to "test positive for cocaine or amphetamines" through July 2024, and did not complete her drug and alcohol evaluation until January 2025. *Id*. at 21, 52. Mother was negative during her last drug screen in December 2024. Following the assessment, Mother initiated the recommended outpatient treatment, but missed the next two appointments.

In a similar fashion, Mother attended the classroom parenting sessions but never completed the in-home portion. Given the significant lapse of time during which Mother failed to complete the entire program, she would have needed to enroll in the classroom portion again before being able to partake in the at-home sessions. Mother did not start the reunification program until March 2025. CYS caseworker Abigail Conklin had to make two referrals for the drug and alcohol evaluation and the parenting classes because they were initially closed for non-compliance. *Id*. at 26, 38.

As for housing, Mother was evicted from the appropriate apartment she had shared with A.B., N.B.'s father. At the time of the hearing, she resided with maternal grandfather, but the home had not been deemed appropriate for children. Moreover, in late December 2024, Mother sought a housing referral, which CYS completed, because some individuals living in maternal grandfather's home used drugs. Notwithstanding this request, she still resided with maternal grandfather at the time of the termination hearing.

Mother was provided visits with the children in the kinship homes at the caretakers' discretion at least twice a month. Since she did not have transportation to the kinship homes, she relied on them bringing her children to her. Maternal grandmother brought M.J.J.D.S. to visit with Mother multiple times a week. Paternal aunt arranged to meet Mother for visits approximately twice a month. Visitations with N.B. and S.K.S. were subsequently moved to the agency's offices, given the distance to paternal aunt's home, and offered twice a month. Mother attended two of the four scheduled visits at CYS. Additionally, Mother maintained contact with the kinship caretakers and interacted with the children via text, phone calls, and video chats, as well as providing gifts on holidays. She has attended medical appointments for M.J.J.D.S., but not for her daughters. Notably, paternal aunt testified that if she adopted N.B. and S.K.S., they would continue to have supervised contact with Mother and their respective fathers.

On February 11, 2025, CYS sought termination of Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8). The orphans' court held a hearing on March 25, 2025.[3] CYS presented testimony from the assigned CYS caseworkers, CYS casework supervisor Brittany McHenry, and paternal aunt, reflecting the above history. Abigail Tylus, who oversaw the

---

[3] All three children were represented by Jessica Phillips, Esquire, as their guardian *ad litem* ("GAL"). The court also appointed separate legal counsel for the children: Lukas Gatten, Esquire, to represent M.J.J.D.S. and N.B., and Christine Cardinale, Esquire, to represent S.K.S. Attorney Cardinale attended the hearing by telephone.

cases at the time of the termination hearing, testified that the conditions leading to the children's placement continued to exist. *See* N.T. Hearing, 3/25/25, at 68. Mother testified in her defense, expressing her love for her children and asserting that her lack of transportation and a cell phone impeded her ability to complete court-ordered services. The children's GAL opined that it would be in their best interests for Mother's parental rights to be terminated.

At the conclusion of the hearing, the orphans' court held that CYS had met its burden and it would be in the children's best interests to terminate Mother's parental rights. Accordingly, it entered orders involuntarily terminating her parental rights as to M.J.J.D.S., S.K.S., and N.B. This timely appeal followed. Mother complied with the dictates of Pa.R.A.P. 1925, and the court submitted nearly identical statements in lieu of opinions as to each child supporting its orders. In this Court, Mother raises the following issues challenging the court's terminations of her parental rights:

1. Whether the [orphans'] court erred in finding that [CYS] had proven by clear and convincing evidence that she had established the statutory grounds for termination as alleged under 23 Pa.C.S. § 2511(a)(1).

2. Whether the [orphans'] court erred in finding that [CYS] had proven by clear and convincing evidence that she had established the statutory grounds for termination as alleged under 23 Pa.C.S. § 2511(a)(2).

3. Whether the [orphans'] court erred in finding that [CYS] had proven by clear and convincing evidence that she had established the statutory grounds for termination as alleged under 23 Pa.C.S. § 2511(a)(5).

4. Whether the [orphans'] court erred in finding that [CYS] had proven by clear and convincing evidence that she had established the statutory grounds for termination as alleged under 23 Pa.C.S. § 2511(a)(8).

5. Whether the [orphans'] court erred in finding that the termination of the father's [*sic*] parental rights was in the best interests of the child under 23 Pa.C.S. § 2511(b).

Mother's brief at 7 (citations corrected).

In reviewing termination petitions, this Court must accept the orphans' court's findings of fact and credibility determinations so long as they have record support. **See In re E.J.C.**, 335 A.3d 1222, 1229 (Pa.Super. 2025). In that event, we are tasked with determining whether the "court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The [orphans'] court's decision, however, should not be reversed merely because the record would support a different result." **Id**. (cleaned up). We grant such deference to the orphans' court because it "often ha[s] first-hand observations of the parties spanning multiple hearings." **Id**. (cleaned up).

Involuntary termination is governed by 23 Pa.C.S. § 2511, which sets forth a bifurcated framework. First, the orphans' court must assess whether the petitioner has established, by clear and convincing evidence, that termination is warranted pursuant to one of the grounds outlined in § 2511(a). **Id**. at 1230. Only then does the court proceed to § 2511(b), "which focuses upon the child's developmental, physical, and emotional needs and welfare."

*Id*. (cleaned up). This Court need only agree with the orphans' court's conclusion as to one subsection of § 2511(a), as well as § 2511(b), to affirm. *Id*.

Presently, we focus upon § 2511(a)(8) and (b). Those provisions state as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, [twelve] months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511. "Notably, termination under [§] 2511(a)(8), does **not** require an evaluation of Mother's willingness or ability to remedy the

- 7 -

conditions that led to placement of her children." ***In re Adoption of R.J.S.***, 901 A.2d 502, 511 (Pa.Super. 2006) (emphasis in original).

In the matter *sub judice*, because the orphans' court did not present separate conclusions as to each subsection of § 2511(a), Mother declines to set forth separate arguments, instead lumping together her challenges to the four pertinent subsections of § 2511(a). While we do not condone the decision of the orphans' court and Mother not to address these distinct subsections separately, it does not hamper our review. Mother's argument as to how CYS failed to sustain its burden is simple. She contends that "although her compliance with services and conduct toward the children has not been optimal in the past, on the balance . . . she has tried her best and that the evidence produced by" CYS was insufficiently "convincing to enable the trier of fact to come to a clear conviction without hesitance of the truth of the precise facts at issue." Mother's brief at 23.

However, in addressing § 2511(a)(8), Mother does not dispute that the children had been removed from her care for more than twelve months as of the filing of the termination petitions. Therefore, we have no cause to disturb this finding.

Turning to the second part of § 2511(a)(8), the court found Mother's testimony not to be credible and determined that she "showed no ability or fervent desire to cure the reasons for the removal[.]" ***See e.g.***, Orphans' Court Statement (N.B.), 4/24/25, at 5. This conclusion is supported by the record. Plainly, the conditions leading to the placement of all three children

- 8 -

continued to exist at the time CYS filed the petitions. Mother did not have stable housing, she had not remedied the drug concerns, and she had not completed the necessary parenting and reunification programs. In the more than twelve months between when the children were adjudicated dependent and CYS filed the petitions, Mother failed to meaningfully comply with her objectives. While we recognize that Mother has recently begun to abide by the court's directives, that cannot overcome the fact that the conditions leading to placement nonetheless continued to exist. We have reiterated time and again:

> [B]y allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit eighteen months, in which to complete the process of either reunification or adoption for a child who has been placed in foster care.

*Interest of M.E.*, 283 A.3d 820, 832 (Pa.Super. 2022) (cleaned up). We commend Mother for her recent progress and hope that she continues down that path to maintain healthy contact with her children through the kinship parents. However, we discern no abuse of discretion on the part of the orphans' court in determining that CYS had met its burden of proof as to this prong.

Finally, "[§] 2511(a)(8) explicitly requires an evaluation of the 'needs and welfare of the child'" prior to proceeding to [§] 2511(b)[.]" *In re C.L.G.*, 956 A.2d 999, 1008 (Pa.Super. 2008) (*en banc*). Here, the court emphasized the children's need for permanency, their bond with their kinship placements, and Mother's inability to reunify at the time of the hearing, before concluding that termination was in the best interests of each child. This determination is supported by the record. Based on the foregoing, Mother's challenge to the court's findings as to § 2511(a)(8) fails.

Having found statutory support for termination, we now consider § 2511(b), which requires the orphans' court to "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). We note that "the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis," with an eye towards "each child's specific needs." *Interest of K.T.*, 296 A.3d 1085, 1105-06 (Pa. 2023) (cleaned up).

This inquiry must factor in the bond between the parent and the child. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993). Our Supreme Court has explained, however, that "only a necessary and beneficial" parental bond should be maintained. *Interest of K.T.*, 296 A.3d at 1009. A bond is considered "necessary and beneficial" if its severance would cause extreme emotional consequences or significant, irreparable harm. *Id*. at 1009-10. The extent, however, of the "bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321,

324 (Pa.Super. 2010) (cleaned up). It is "within the discretion of the orphans' court to prioritize the safety and security" of children "over their bonds with their parents[.]" *Interest of M.E.*, 283 A.3d at 839 (citations omitted). Courts should also consider "whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *Interest of K.T.*, 296 A.3d at 1106 (cleaned up). Finally, we also note that a child's "emotional needs and welfare include intangibles, such as love, comfort, security, and stability." *Id*. (cleaned up).

Mother argues that the orphans' court "downplay[ed] the strength" of her bond with her children. *See* Mother's brief at 28. Additionally, she contends that because paternal aunt plans to keep Mother in the lives of S.K.S. and N.B., terminating her rights "would serve no legitimate purpose and would harm the relationship that [she] has had and will continue to have with her children." *Id*. at 29. She does not dispute the bond her children share with the kinship caretakers with whom they have resided for more than a year, nor the fact that she is not presently able to provide her children with a safe, stable home.

The orphans' court acknowledged that Mother had some level of bond with each child and credited her testimony that she loved her children. However, the court determined that was insufficient to defeat its conclusion that terminating Mother's parental rights in favor of permanency was in each child's best interests. We discern no abuse of discretion in the court's analysis. The record confirms that as of the termination hearing, N.B. and M.J.J.D.S.

had been in their pre-adoptive kinship foster placements for seventeen months, and S.K.S. had been with hers for twelve months. Each child was bonded to their kinship caretakers and was thriving in those placements. The court was wholly empowered to prioritize each child's need for permanency and safety over their individual bonds with Mother.

Accordingly, we affirm the orders terminating Mother's parental rights as to M.J.J.D.S., S.K.S., and N.B.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/11/2025